**TA LEGAL GROUP PLLC**
Taimur Alamgir (TA 9007)
315 Main Street, Second Floor
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com
*Attorneys for Plaintiff William Chappell,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X

WILLIAM CHAPPELL, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*               **Case No: 24-CV-7839**

        Plaintiff,

                              **CLASS AND COLLECTIVE**
                              **ACTION COMPLAINT**

        - against –

GENERAL DATATECH, L.P.,                                    **Jury Trial Demanded**

        Defendant.
-------------------------------------------------------------X

Plaintiff, William Chappell ("Plaintiff"), by and through his undersigned attorneys of record, TA Legal Group PLLC, hereby files this Class and Collective Action Complaint against Defendant, General Datatech, L.P. ("Defendant" or "GDT"), and alleges as follows:

**CLAIMS**

1.      Plaintiff alleges, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., that he and FLSA Collective Members (as defined below) are entitled to recover damages from Defendants for: (1) unpaid overtime wages and (2) liquidated damages.

2.      Plaintiff further alleges, pursuant to the New York Labor Law ("NYLL") and Fed. R. Civ. P. 23, that he and Class Members (as defined below) are entitled to recover damages from Defendants for: (1) unpaid regular and overtime wages, (2) liquidated damages, (3) statutory

penalties for failing to provide wage notices in compliance with NYLL § 195.1 and (4) statutory penalties for failing to provide wage statements in compliance with NYLL § 195.3.

3.      Plaintiff further alleges, that he and Class Members (as defined below), as third-party beneficiaries to applicable public works contracts are entitled to (1) unpaid prevailing wages, (2) supplemental benefits, (3) pay at time-and-one-half for shifts worked exceeding 8 hours in duration, (4) pay at time-and-one-half for shifts worked on holidays, and (5) additional pay due for shift differential payments, in accordance with applicable schedules set forth by the Comptroller for the City of New York. Alternatively, Plaintiff alleges that he and Class Members are entitled to restitution and other applicable damages based on unjust enrichment and/or quantum meruit.

4.      Plaintiff further alleges that he and Subclass Members (as defined below) are entitled to unpaid bonuses required to be paid pursuant to New York State Health Care and Mental Hygiene Workers Act for "frontline" work during the COVID-19 pandemic under Part ZZ of Chapter 56 of the Laws of 2022.

5.      Plaintiff further alleges that he is entitled to attorney's fees and costs and reserves the right to seek additional damages available under applicable law.

## PARTIES

6.      General Datatech, L.P. is a Texas corporation with an address for service of process at Corporation Service Company d/b/a CSC Lawyers Inco, 211 E. 7th Street, Suite 620, Austin, TX 78701. GDT's headquarters is located at 999 Metro Media Place, Dallas, TX 75247.

7.      Plaintiff William Chappell is an adult resident of Kings County, New York.

8.      From July 2020 to July 2022, Plaintiff performed work for GDT as a Senior Telecommunications Technician on "public works" sites in Bronx, New York.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337.

10.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.     This Court alternatively has diversity jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332, as Plaintiff and GDT are citizens of different states and the amount in controversy is in excess of $75,000.

12.     This Court has personal jurisdiction over GDT pursuant to CPLR § 302 because GDT transacts a significant volume of business in the State of New York and contracts to supply goods and services within the State of New York, including a contract to provide telecommunications infrastructure installation, maintenance, and repair services to New York City facilities located in the State of New York.

13.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

14.     GDT engages in an enterprise whose annual volume of sales made or business done is not less than $500,000 and the activities of which affect interstate commerce, in that the employees of GDT (including Plaintiff) handle goods and materials produced outside of New York that have moved in interstate commerce. GDT is thus an employer subject to the jurisdiction of the FLSA.

15.     At all relevant times, Plaintiff and Class Members were employed by Defendant within the meaning of the NYLL §§ 2 and 651.

16.     Plaintiff is not subject to an arbitration agreement. Plaintiff, FLSA Collective Plaintiffs, and Class Members also fall within the "class of workers engaged in foreign or interstate commerce" referenced in the Federal Arbitration Act ("FAA"), § 1, and are therefore exempt from arbitration.

17.     At all relevant times, GDT was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and the NYLL and any Regulations thereunder.

18.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by GDT.

19.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

20.     Plaintiff's claims under New York State law were tolled by the State of New York from March 23, 2020 through November 3, 2020, for 228 days in connection with the state of emergency declared in connection with COVID-19 and Executive Order (A Cuomo) 202.8. and subsequent orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.55.1, 202.60, 202.67, 202.72 [9 NYCRR  8.202.14,  8.202.28,  8.202.38,  8.202.48,  8.202.55,  8.202.55.1,  8.202.60,  8.202.67, 8.202.72. *Matter of Echevarria v Board of Elections in the City of NY*, 183 A.D.3d 857, 858, 122 N.Y.S.3d 904 [2d Dept, May 21, 2020]).

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Plaintiff brings claims for relief as a collective action pursuant to the FLSA, 29 U.S.C.  §  216(b),  on  behalf  of  all  Telecommunications  Technicians  and  Senior Telecommunications Technicians employed by GDT in New York City, on or after the date that is six (6) years before the filing of the Complaint in this action ("FLSA Collective Plaintiffs").

22.     At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to GDT's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them overtime wages. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs.

23.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from GDT. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to GDT.

## RULE 23 CLASS ACTION ALLEGATIONS

24.     Plaintiff seeks relief under Federal Rule of Civil Procedure 23 on behalf of:

    a.  A Class, consisting of all Telecommunications Technicians and Senior Telecommunications Technicians employed by GDT in New York City on or after the date that is six (6) years before the filing of the Complaint in this action employed by GDT (hereafter "Class" or "Class Members"), and

    b.  A Subclass of Class Members consisting of all Telecommunications Technicians and Senior Telecommunications Technicians employed by GDT at "frontline" medical facilities in New York City by GDT from March 2020 until the present (hereafter "Subclass" or "Subclass Members")

25.     Throughout the relevant periods, Plaintiff and Class Members have been similarly situated, sharing substantially similar job requirements, pay provisions, and  subjected  to GDT's

5

uniform decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules. This unified treatment resulted in widespread failures to pay Plaintiff and Class Members:

    a.  regular wages

    b.  overtime wages;

    c.  proper prevailing wages;

    d.  proper supplemental benefits;

    e.  additional pay at time-and-one half the prevailing wage rate for shifts exceeding 8 hours in duration and holiday;

    f.  additional pay for shift differentials;

    g.  (with respect to the Subclass) bonuses promised to frontline workers in the COVID-19 pandemic by New York State and

    h.  failure to provide required wage notices and statements in compliance with NYLL § 195.1 and § 195.3, respectively.

26. The claims of Plaintiff stated herein are essentially the same as those of Class Members.

27. Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of GDT. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from GDT's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from GDT. Notice can be provided by means permissible under F.R.C.P. 23.

28. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are

presently within the sole control of GDT, there is no doubt that there are more than forty (40) members of the Class. There are similarly more than forty (40) members of the subclass.

29.    GDT's enterprise-wide policies and practices affected all Class Members similarly, and GDT benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

31.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

32.    Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs.

33.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

34.    There are questions of law and fact common to the class which predominate, including:

a.    What are and were the policies, practices, programs, procedures, protocols and plans of GDT regarding the types of work and labor for which GDT did not pay Plaintiff and Class Members properly;

b.    At what common rate, or rates subject to common methods of calculation, were and are GDT required to pay Plaintiff and Class Members for their work;

c.    Whether GDT failed to compensate Plaintiff and Class Members for all hours worked.

d.    Whether GDT failed to pay Plaintiff and Class Members overtime pay for hours worked in excess of 40 each week.

e.    whether GDT breached contracts with New York City or any agency thereof by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates;

f.    whether GDT breached contracts with local, state and/or federal governmental entities by failing to pay Plaintiffs and the Class Members, who were third-party

8

beneficiaries of such contracts, at New York State and/or New York City supplemental benefits;

g.  whether GDT breached contracts with local, state and/or federal governmental entities by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, time-and-one-half for working on shifts exceeding 8 hours in duration;

h.  whether GDT breached contracts with local, state and/or federal governmental entities by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, time-and-one-half for working on holiday;

i.  whether GDT breached contracts with local, state and/or federal governmental entities by failing to pay Plaintiffs and the Class Members, who were third-party beneficiaries of such contracts, additional pay for shift differentials where shifts began prior to 8AM or ended following 6PM;

j.  whether GDT unlawfully failed to provide Plaintiff and Subclass Members bonuses required to be paid pursuant to the New York State Health Care and Mental Hygiene Workers Act to "frontline" work during the COVID-19 pandemic

k.  Whether GDT unlawfully failed to provide Plaintiff and Class Members wage notices in compliance with NYLL 195.1;

l.  Whether GDT unlawfully failed to provide Plaintiff and Class Members wage statements in compliance with NYLL 195.3

## STATEMENT OF FACTS

**Plaintiff's Employment With GDT**

35.     GDT is an global information technology solutions and systems integration company.

36.     Between approximately July 2020 and July 2022, GDT was party to a public works contract with the City of New York to provide services including installation, maintenance, and repair of telecommunications systems and networks at City-owned facilities.

37.     Plaintiff was employed by GDT as a Senior Telecommunications Technician in New York City between July 2020 and July 2022.

38.     During Plaintiff's employment, GDT required him to report to and perform work at hospitals in the NYC Health + Hospitals system, including, among others:

   a.  NYC Health + Hospitals/North Central Bronx.

   b.  NYC Health + Hospitals/Jacobi.

   c.  NYC Health + Hospitals/Elmhurst.

39.     During his employment by GDT, Plaintiff performed work on public works projects in accordance with the contract between GDT and New York City.

40.     Plaintiff's duties during his employment at GDT included installation, maintenance and repair of telecommunications systems and networks at New York City facilities.

41.     Like Plaintiff, FLSA Collective Plaintiffs and Class Members were required by GDT to perform work on public works projects, in accordance with the contract(s) between GDT and New York City.

42.     Like Plaintiff, FLSA Collective Plaintiffs were required by GDT to perform work including installation, maintenance and repair of the telecommunications systems and networks.

43.     Between July 2020 and July 2022, GDT was a single integrated enterprise and/or joint employer with respect to Plaintiff, FLSA Collective Plaintiffs, and Class Members, with interrelated operations, centralized control of labor relations, common management and common financial control. Plaintiff, FLSA Collective Plaintiffs, and Class Members were subject to the same employment policies and practices, were interchangeable with one another, and were each required by GDT to work at multiple City facilities.

**Plaintiff, FLSA Collective Plaintiffs, and Class Members Were Deprived Of Regular and Overtime Compensation**

44.     During his employment by GDT, Plaintiff was compensated at straight time base hourly rates as follows:

a.   Between July 2020 and July 2021, $45.88 per hour.

b.   Between July 2021 and July 2022, $47.03 per hour.

45.     During his employment by GDT from July 2020 to July 2022, Plaintiff regularly worked a total of approximately 45-50 hours per week on average.

46.     During his employment, Plaintiff was regularly required to work shifts lasting 8-10 hours per day, 5 days per week.

47.     GDT paid Plaintiff at his straight time base hourly rate for all hours worked, including compensable work time exceeding 40 hours per week. GDT failed to pay Plaintiff at the overtime premium rate of 1.5x his regular rate for those hours he worked in excess of 40 per workweek.

48.     Similarly, FLSA Collective Plaintiffs and Class Members were paid for all hours worked at their straight time base hourly rates. Like Plaintiff, FLSA Collective Plaintiffs and Class Members were deprived of overtime pay at 1.5x the regular rate for compensable work hours exceeding 40 per workweek.

49.     During his employment by GDT, in addition to his regular, scheduled work shifts, Plaintiff was required by GDT to work "on call" shifts lasting approximately 6-8 hours per week every other week. In addition, Plaintiff was required to remain on call for 9-10 hours overnight shifts on site approximately 5-6 times per year.

50.     During Plaintiff's on call work shifts, GDT required Plaintiff to remain on call and report to GDT sites to perform work. Throughout each on call shift, Plaintiff was required to remain ready to perform his duties at all times, and maintain constant communication with Plaintiff, which would direct him to report to work at GDT sites. During these on call work shifts, GDT did not allow Plaintiff to perform personal tasks, or use the time for his own purposes or benefit.

51.     During his employment by GDT, Plaintiff was required to work an on call shift lasting approximately 6-8 hours per week every other week.

52.     GDT paid Plaintiff for on call shifts at his regular straight time hourly rate. GDT failed to pay Plaintiff overtime even when his aggregate weekly hours, including on call time, exceeded 40 hours per workweek.

53.     For example, during the pay period from January 9, 2022 to January 15, 2022, Plaintiff's wage statement issued by GDT shows 40 hours of regular work time, for which Plaintiff received $47.03 per hour, and an additional 9 hours of on call time, for which Plaintiff was paid at $47.03 per hour (his regular straight time hourly rate). Despite working a total of 49 hours during this period per the paystub, Plaintiff was not paid overtime premium at 1.5x the prevailing wage rate ($70.55) for compensable work hours in excess of 40.

54.     Like Plaintiff, FLSA Collective Plaintiffs and Class Members were required to work on call shifts regularly, during which FLSA Collective Plaintiffs were required to remain on

call and report to GDT sites to perform work, and were not permitted perform personal tasks, or use the time for their own purposes or benefit.

55.     The on call shifts worked by Plaintiff during his employment by GDT constituted compensable work time. Likewise, the on call shifts worked by FLSA Collective Plaintiffs and Class Members constituted compensable work time

56.     Like Plaintiff, FLSA Collective Plaintiffs and Class Members were paid at their regular straight time hourly rates for on call shifts, even though, in aggregate, their hours including on call shifts exceeded 40 hours per workweek.

57.     Plaintiff, FLSA Collective Plaintiffs, and Class Members were commonly deprived of overtime because of GDT's failure to pay them overtime for the hours in excess of 40 that they spent working on call shifts.

**Plaintiff and Class Members Were Deprived Of Prevailing Wages and Supplemental Benefits**

58.     During his employment by GDT, Plaintiff was a telecommunications worker on New York City public works project subject to public works contract(s) between New York City and GDT.

59.     Pursuant to NYLL § 220, Plaintiff was (as a third-party beneficiary) entitled to prevailing wages and supplemental benefits in accordance with applicable prevailing wage schedules issued by the New York City comptroller.

60.      Class Members were also telecommunications workers working on New York City public works, and therefore third-party beneficiaries of the aforesaid public works contract(s) between New York City and GDT.

61.     Like Plaintiff, Class Members were entitled to prevailing wages and supplemental benefits pursuant to the same prevailing wage schedules that applied to Plaintiff.

62. Under the applicable prevailing wage schedules, Plaintiff was entitled to supplemental benefits at $23.15 per hour for the duration of his employment. However, GDT failed to pay Plaintiff supplemental benefits as required under the prevailing wage order throughout his period of employment.

63. Similarly, GDT failed to pay Class Members supplemental benefits as required under the prevailing wage order.

64. Under the applicable prevailing wage schedules, Plaintiff was entitled to pay at 1.5x his regular rate for hours worked in excess of 8 on any given work day. Plaintiff frequently worked up to 2 hours per day in excess of 8 hours per day. However, Plaintiff was not paid anything for such time exceeding 8 hours per workday.

65. Similarly, Class Members regularly worked shifts exceeding 8 hours, but did not receive compensation for the work exceeding 8 hours per day that they performed. As with Plaintiff, GDT failed to pay Class Members at rates 1.5x the regular rate for work time exceeding 8 hours.

66. During his employment by GDT, Plaintiff was frequently required to work on public holidays listed in the applicable prevailing wage schedules. Similarly, Class Members were required to work on public holidays.

67. Under the applicable prevailing wage schedules, Plaintiff was entitled to compensation at 1.5x the regular rate for time worked on holidays. However, Plaintiff was compensated at his regular rate on holidays.

68. For example, Plaintiff's wage statement for the pay period from January 2, 2022 to January 8, 2022 includes 8 hours of holiday work time, for which Plaintiff was compensated at his

14

regular straight time hourly rate ($47.03 per hour). Plaintiff should have been paid at 1.5x the regular prevailing wage pay rate ($70.55) for such holiday work time.

69.     Like Plaintiff, Class Members were deprived of pay at 1.5x the regular pay rate due under the applicable prevailing wage schedule for time worked on public holidays.

70.     Under the applicable prevailing wage schedules,, Plaintiff was entitled to receive 10% additional pay for shift differentials – i.e., shifts commencing before 8AM or ending after 6PM.

71.      During his employment with GDT, Plaintiff was required on a frequent basis to report to work before 8AM, and required to perform work after 6PM.

72.     However, Plaintiff was never paid the shift differential pay of 10% above his regular pay rate for said shfits.

73.     Likewise, Class Members were required to commence working prior to 8AM and ended work after 6PM on a regular basis, but were deprived of shift differential pay.

74.     Like Plaintiff, Class Members were deprived of shift differential pay due under the applicable prevailing wage schedule.

**GDT Failed To Pay Plaintiff And Subclass Members Bonus Payments As Frontline Workers During The COVID-19 Pandemic**

75.     Pursuant to New York State Health Care and Mental Hygiene Workers Act (Part ZZ of Chapter 56 of the Laws of 2022), frontline workers during the COVID-19 pandemic were entitled to bonus payments.

76.     The COVID-19 pandemic coincided with Plaintiff's employment and the employment of Subclass Members.

77.     As "technicians" working at NYC-owned and operated medical facilities, Plaintiff and Subclass Members qualified for the aforesaid bonuses.

78.   However, GDT failed to pay Plaintiff and Subclass Members the bonuses owed.

**GDT Failed To Provide Plaintiff and Class Members Proper Wage and Hour Notices and Statements**

79.   GDT never issued Plaintiff a wage-and-hour notice setting forth his compensation or other information required under NYLL 195.1. Nor did GDT issue Plaintiff proper wage statements in compliance with NYLL 195.3. [1]

80.   Similarly, Class Members were not issued proper wage-and-hour notices or wage statements.

81.   Plaintiff engaged TA Legal Group PLLC to represent him, FLSA Collective Plaintiffs, and Class Members, and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I – COLLECTIVE-WIDE ACTION VIOLATION OF THE FLSA

82.   Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

83.   At all relevant times, Defendant has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the

---

[1] In failing to provide proper wage statements and notices, Defendant has failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being properly paid. Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendant's failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, and commission payments deprived employees of the ability to contest the pay provided by Defendant, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Member's rights. This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Plaintiff and Class Members are therefore entitled to statutory damages.

FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

84.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

85.    At all relevant times, Defendant had gross annual revenues in excess of $500,000.

86.    At all relevant times, Defendants violated the FLSA because of their policy and practice of failing to pay Plaintiff the full amount of overtime wages.

87.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendant. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Members for all hours worked, including overtime hours, when Defendants knew or should have known such was due.

88.    Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

89.    As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

90.    Due to the intentional, willful and unlawful acts of Defendant, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime

wages. Plaintiff is entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II – RULE 23 CLASS-WIDE VIOLATION OF THE NEW YORK LABOR LAW

91.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

92.     At all relevant times, Plaintiff and Class Members were employed by Defendant within the meaning of the NYLL §§ 2 and 651.

93.     Defendant knowingly and willfully failed to pay Plaintiff and Class Members overtime wages in violation of the NYLL.

94.     Defendant knowingly and willfully failed to provide Plaintiff and Class Members with proper wage statements as required under the NYLL.

95.     Defendant knowingly and willfully failed to provide Plaintiff and Class Members with proper wage and hour notices as required under the NYLL.

96.     Due to the Defendant's NYLL violations, Plaintiff and Class Members are entitled to recover from Defendant overtime wages, attorneys' fees and costs, liquidated damages, statutory penalties, costs and disbursements of the action, and interest pursuant to the NYLL.

## COUNT III -  RULE 23 CLASS-WIDE FAILURE TO PAY PREVAILING WAGES AND SUPPLEMENTAL BENEFITS

97.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

98.     Upon information and belief, when GDT entered into the Public Works Contracts with New York City, they agreed to pay the required prevailing wages, overtime, shift-

differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to these contracts.

99.    Plaintiff and Class Members were third-party beneficiaries of the public works contract(s) between GDT and New York City.

100.    Plaintiff and Class Members were entitled to prevailing wages, supplemental benefits, and other compensation under New York law, as determined by the schedules set forth by the Comptroller for the City of New York.

101.    Defendant's failure to pay these prevailing wages and benefits constitutes a violation of New York Labor Law and the applicable provisions of the New York City Administrative Code.

102.    Plaintiff and Class Members are entitled to recover unpaid prevailing wages and supplemental benefits, liquidated damages, attorney's fees and costs, costs and disbursements of the action, and interest.

## COUNT IV -   UNJUST ENRICHMENT AND QUANTUM MERUIT
## (IN THE ALTERNATIVE TO COUNT III)

103.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

104.    Based on GDT's  failure to pay Plaintiff and Class Members the appropriate prevailing wage rates, GDT was unjustly enriched at the expense of Plaintiffs.

105.    Upon information and belief, when GDT entered into public works contracts with New York City, GDT agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to these contracts

106.    Plaintiff and Class Members provided valuable services to Defendant on prevailing wage projects for which Plaintiff and Class Members expected compensation. Defendant knowingly accepted such services yet failed to pay Plaintiff the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

107.    As a result of GDT's failure to pay Plaintiff and Class Members at prevailing wage rates on prevailing wage jobs and GDT's corresponding unjust enrichment, Plaintiff and Class Members are entitled to relief from GDT under New York's common law of unjust enrichment.

108.    As a result of GDT's failure to pay Plaintiff and Class Members the reasonable value of the valuable services they rendered, Plaintiff is entitled to relief from Defendants under New York's common law of quantum meruit.

109.    Equity and good conscience require that GDT pay restitution to Plaintiff and Class Members.

## COUNT V – RULE 23 SUBCLASS-WIDE FAILURE TO PAY BONUSES DUE TO FRONTLINE WORKERS

110.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Complaint as if fully set forth herein.

111.    Plaintiff and Subclass Members were frontline workers at New York State medical facilities during the COVID-19 pandemic.

112.    Under Part ZZ of Chapter 56 of the Laws of 2022, Plaintiff and Subclass Members were entitled to bonuses promised by New York State.

113.    GDT's failure to pay the aforesaid bonuses violated the rights of Plaintiff and Subclass Members under the foregoing provision.

114.    Plaintiff and Subclass Members are entitled to recovery of the bonuses owed to them and other appropriate relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under FLSA, NYLL, and other laws cited hereinabove

b.  An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages, overtime compensation, prevailing wages and supplemental benefits (or restitution), and COVID-19 frontline worker bonuses due to Plaintiff and Class Members, along with interest.

d.  An award of liquidated damages in favor of Plaintiff, FLSA Collective Plaintiffs, and Class Members, pursuant to the FLSA and NYLL.

e.  An award of statutory penalties in favor of Plaintiff, FLSA Collective Plaintifs, and Class Members for Defendant's violations of NYLL § 195.1 and § 195.3.

f.  An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), NYLL, and other applicable laws.

g.  An award of prejudgment and post-judgment interests, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h.  Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs.

i.  Designation of this action as a class action pursuant to Fed. R. Civ. P. 23.

j.   Designation of Plaintiff as Representative of the Class.

k.   Such other relief as this Court deems just and proper.

### **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by

jury on all issues so triable as of right by jury.

Dated:        Huntington, NY
              October 16, 2024

                             **TA LEGAL GROUP PLLC**
                             *Attorneys for Plaintiff William Chappell,*
                             *FLSA Collective Plaintiffs and the Class*

          By:    _____
                             Taimur Alamgir
                             315 Main Street, Second Floor
                             Huntington, NY 11743
                             Tel. (914) 552-2669
                             tim@talegalgroup.com